## Inez M. Gillett, Adm'x, et al. v. Jessie D. Gillett, Adm'x.

1. WILLS—*Ownership of Undivided Earnings—Stock of Bank Winding Up Business—Lapsed Legacies.*—A will contained the following provisions :

"I give and devise to my wife in case she shall survive me, for and during the period of her natural life, all the use, interest, dividends and profits that may accrue during such period on or from any shares of bank stock which I may own at the time of my death.

"If, during the life of my said wife, and after my death, any of the banks in which I shall own said stock, shall wind up its business and distribute its capital among its stockholders, my said wife shall be entitled to receive and receipt for all sums payable on the certificates so to be held by her for life.

"She is hereby empowered to reinvest the principal of said stock as safely as possible, and to collect and retain to her own use all interests and profits derived from such investment during her natural life.

"If my said wife shall survive me I give and bequeath all my bank stock that shall remain unsold at the time of her death, and all money arising from the sale of said bank stock by my wife in manner following, to-wit :

(Then follow various sums given to each of his eight children.)

"If any of my said children shall depart this life before my said wife, leaving no child or children who shall survive my said wife, then the share or shares of said bank stock and money which would otherwise go to such deceased child or children, shall be divided in equal parts among the survivors of my children named as aforesaid.

"I distinctly direct and declare that in bequeathing said bank stock and any money that shall arise from the sale of any part thereof by my said wife, it is my desire and intention that none of my children named as aforesaid, or their children or descendants, shall take any vested interest in said stock or money until the death of my said wife, in case she shall survive me, and that until the death of my said wife and the consequent vesting of said titles and interests, my said children and their descendants shall not be entitled to sell, transfer or encumber any of said stock or money or any interest therein, and that the same shall be wholly free from all judgments, attachments, executions and legal processes, against any of my said children or their descendants until or unless said title or interest shall become vested in them by the death of my said wife."

Shortly after the decease of the testator, one of the banks, the stock of which was disposed of in the will, doubled its capital stock out of surplus funds and divided such stock among the original stockholders. Two other banks voluntarily wound up their business.

Two children of the testator died without issue surviving before the death of the testator's widow.

*Held,* That the term stock, as used, includes not only the capital stock considered at par, but also the surplus undivided, used by the bank and partaking of many of the attributes of capital stock, and the widow had only a life estate in it.

That the proceeds derived from the banks upon winding up affairs and closing business pass to the specific legatees at the death of the widow.

That the vesting of any interest in the remainder of the bank stock after the life estate, was specifically postponed until the death of the life tenant, and the legatees dying without surviving issue, before that contingency, were never seized of a vested interest in the bank stock, and the bequests to them lapsed.

**Bill to Construe a Will.**—Appeal from the Circuit Court of Logan County; the Hon. JOHN H. MOFFETT, Judge presiding. Heard in this court at the November term, 1902. Affirmed. Opinion filed April 30, 1903.

BLINN & HARRIS, attorneys for appellants.

In construing a will the intention as expressed therein is to govern, and not what was supposed was the testator's intention, not expressed in the will. Kelly v. Gonce, 49 Ill. App. 87; Bingel v. Volz, 142 Ill. 214; Wentworth v. Read, 166 Ill. 142; Williams v. Williams, 189 Ill. 509; Engelthaler v. Engelthaler, 196 Ill. 230.

In construing a will the intention to be sought is not that which existed in the mind of the testator, but that which is expressed by the language of the will. The rule is inflexible that surrounding circumstances can not be resorted to for the purpose of importing into a will any intention not therein expressed. Williams v. Williams, 189 Ill. 509; Section 460, page 537, Page on Wills; Sturgis v. Work, 122 Ind. 134; Pack v. Shanklin, 43 West Va. 304.

Where a bank has accumulated a surplus, the title is in the corporation, and if, after the death of the testator, by action of the stockholders and directors, the surplus was used to increase the capital, stock issued and paid for out of the surplus, the stock by such action became separated from the *corpus* or body of the original stock. Vol. 2, Clark & Marshall on Private Corporations, pages 1607, 1608; Gibbons v. Mahon, 136 U. S. 549; Waterman v. Alden, 42 Ill. App. 319; Beveridge v. New York Elevated R. R. Co., 2 L. R. A. 654; Spooner v. Phillips, 16 L. R. A. 465.

HUGH CREA, attorney for Charlotte L. Barnes as trustee.

Meaning of terms used by testator: "Bank stock." Farrington v. Tennessee, 95 U. S. 687; 1 Cook on Corp., Secs. 12–8; People v. Wemple (N. Y.); 44 N. E. 787; People v. Coleman, 126 N. Y. 437; 27 N. E. 818; Commonwealth v. Henderson Bridge Co. (Ky.), 29 L. R. A. 76; Higgins v. Lansingh, 154 Ill. 333.

"Use, interest, dividends and profits." Hinckley v. Primm, 41 Ill. App. 579; 2 Cook on Corp., Sec. 534; Lockhart v. Van Alstyne, 31 Mich. 79; 2 Thomp. Corp., Sec. 2126, 2172, 2206; Rose v. Barclay, 191 Pa. St. 594; 45 L. R. A. 392; M. & O. R. R. Co. v. Tennessee, 153 U. S. 486; Hyatt v. Allen, 56 N. Y. 553; 15 Am. Rep. 449; Walker v. Walker, 68 N. H. 407; 5 Am. & Eng. Ency., 1st Ed. 729–732–733; Pritchitt v. Nashville Trust Co., 96 Tenn. 472; 33 L. R. A. 860.

"Accrue," in law, means to become vested. Anderson's Law Dictionary; Standard Dictionary; Century Dictionary; Johnson v. Humboldt Ins. Co., 91 Ill. 95.

Dividends or profits do not accrue to a stockholder until they are set off to him, by a vote of the directors. Waterman v. Alden, 42 Ill. App. 294; Hite v. Hite, 93 Ky. 257; 19 L. R. A. 173; Hyatt v. Allen, 56 N. Y. 553; In re Kernochan, 104 N. Y. 618.

The court is not called upon to adopt, and it is not necessary for it to adopt, any fixed rule of law favoring either the life tenant or remainderman, in determining the right to the stock dividend in question. Waterman v. Alden, 42 Ill. App. 294; S. C., 144 Ill. 90; Davis v. Jackson, 152 Mass. 59; Hite v. Hite, 93 Ky. 257; 19 L. R. A. 175; McLouth v. Hunt, 154 N. Y. 179; 39 L. R. A. 230; 2 Perry on Trusts, 4th Ed., Sec. 545; Pritchitt v. Nashville Trust Co., 96 Tenn. 472; 33 L. R. A. 860.

Beach, Hodnett & Trapp, attorneys for Nina L. Gillett and Emma S. Oglesby, appellees.

Where the defect in the language is a verbal omission, the meaning of the clause may be implied in order to reach the testator's obvious general intent. Young v. Harkle-

road, 166 Ill. 318; Abbott v. Middleton, 7 H. L. C. 68; Carter v. Bloodgood's Executors, 3 Sanford's Ch. (N. Y.) 293; Boston, etc., Co. v. Coffin, 152 Mass. 95; 25 N. E. Rep. 30; 1 Redfield Wills, p. 466; Metcalf v. Framingham, 128 Mass. 375; 29 Am. Ency. of Law, 372; Kellogg v. Mix, 37 Conn. 243.

It is presumed that the testator intended to dispose of his entire estate, and any reasonable construction is justified to avoid failure to dispose of entire estate. Higgins v. Dwen, 100 Ill. 554; Scofield v. Olcott, 120 Ill. 362; Taubenhan v. Dunz, 125 Ill. 524; Hayward v. Loper, 147 Ill. 41; English v. Cooper, 183 Ill. 203.

Stock dividends are accretions to the capital and go to the remainderman, and not to the life tenant. Waterman v. Alden, 42 Ill. App. 294; Minot v. Paine, 99 Mass. 101; Gibbons v. Mahon, 136 U. S. 559.

HAMILTON & CATRON and R. C. MAXWELL, attorneys for Jessie D. Gillett, administratrix.

The rule in Illinois undoubtedly is, that estates, legal or equitable, to commence *in futuro*, should always be regarded as vesting immediately, unless the testator has, by very clear words, manifested an intention that they should be contingent on a future event. Haward v. Peavey, 128 Ill. 430; Walton v. Follansbee, 131 Ill. 147; Kingman v. Harmon, 131 Ill. 171; Cheney v. Teese, 108 Ill. 482; McCartney v. Osburn, 118 Ill. 421; Scofield v. Olcott, 120 Ill. 371; Knight v. Pottgieser, 176 Ill. 368; Ill. Land & Loan Co. v. Bonner, 75 Ill. 315.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

John D. Gillett died testate on August 24, 1888, and the following provisions of his will are in controversy:

" Ninth. I give and devise to my wife in case she shall survive me, for and during the period of her natural life, all the use, interest, dividends and profits that may accrue during such period on or from any shares of bank stock which I may own at the time of my death. She shall be

entitled to the possession of all certificates representing such stock and to vote them in person or by proxy during her life. If, during the life of my said wife, and after my death, any of the banks in which I shall own said stock, shall wind up its business and distribute its capital among its stockholders, my said wife shall be entitled to receive and receipt for all sums payable on the certificates so to be held by her for life.

She is hereby empowered to reinvest the principal of said stock as safely as possible, and to collect and retain to her own use all interests and profits derived from such investment during her natural life. The principal so invested shall, after the death of my said wife, be applied and distributed· as hereinafter directed. If my said wife shall become satisfied at any time after my death, that it would be wise and judicious to sell any part of said bank stock, she is hereby fully empowered, by and with the advice and consent of my said executors to sell any part, or all of the stock owned by me, in the banks at Pekin, Mt. Pulaski, Farmer City and Bloomington. In the event of making such sale, she shall invest the proceeds thereof as aforesaid, and shall be entitled to take to her own use as her own property all the interest and profits arising from such investment during her natural life. At her death the principal so invested shall be applied as hereinafter directed.

Twenty-fourth. In case my said wife shall not survive me, I give and bequeath all my stock as follows:

To Emma Susan Oglesby, five thousand dollars,

To Grace Adeline Littler, five thousand dollars,

To Nina Lemira Gillett, five thousand dollars,

To Mary Catherine Hill, four thousand dollars,

To Jessie D. Gillett, four thousand dollars,

To Amaryllis Tuttle Gillett, four thousand dollars,

To Charlotte Lancraft Gillett, three thousand dollars; and the remainder, if any, to my son, John Park Gillett.

I hereby direct that said stock be distributed by my executors, not on the face or pay value of said stock, but on its market or selling value, so that the share given to each of my said children shall amount in real value to the sum above specified as intended for her.

If there shall not be sufficient stock to make up the sums indicated, then I direct that all of said bequests shall abate *pro rata.*

If any of my said children shall depart this life before me, leaving any child or children who shall survive me,

then such child or children shall take in equal parts amongst them the share or shares which his, her or their deceased parent or parents would have taken if alive.

If any of my said children shall depart this life before me, leaving no child or children who shall survive me, then the share or shares of such deceased child or children shall be divided in equal parts amongst my surviving children named as aforesaid, the surviving children of any of my children so named as aforesaid, to take in equal parts amongst them, the share or shares which his, her or their deceased parents would have taken if alive.

If my said wife shall survive me I give and bequeath all my bank stock that shall remain unsold at the time of my death, and all money arising from the sale of said bank stock by my wife in manner following, to wit:

To each of my following named children who shall survive my said wife the following parcels or portions, to wit:

To Emma Susan Oglesby, five thousand dollars,

To Grace Adeline Littler, five thousand dollars,

To Nina Lemira Gillett, four thousand dollars,

To Mary Catherine Hill, four thousand dollars,

To Jessie D. Gillett, four thousand dollars,

To Amaryllis Tuttle Gillett, three thousand dollars,

To Charlotte Lancraft Gillett, three thousand dollars; and the remainder, if any, to my son, John Park Gillett.

I direct that my executors shall make distribution not on the par value or face of said stock, but on the basis of the market or selling value thereof; so that the share given to each of my said children shall amount in real value to the sum above specified as intended for her.

If my bank stock, together with the money arising from the sale of any part thereof, shall not be sufficient to discharge said specific bequests, then each bequest shall abate *pro rata*.

If any of my said children shall depart this life before my said wife, leaving any child or children who shall survive my said wife, then such child or children shall take in equal parts amongst them the share or shares of said bank stock and money which his, her or their deceased parent or parents would have taken in the event of surviving my said wife. If any of my said children shall depart this life before my said wife, leaving no child or children who shall survive my said wife, then the share or shares of said bank stock and money which would otherwise go to such deceased child or children shall be divided in equal parts among the

Gillett v. Gillett.

survivors of my children named as aforesaid, the surviving children of any of my children so named to take in equal parts amongst them the share or shares which his, her or their deceased parent would have taken if alive at the death of my said wife.

I distinctly direct and declare that in bequeathing said bank stock and any money that shall arise from the sale of any part thereof by my said wife, it is my desire and intention that none of my children named as aforesaid, or their children or descendants, shall take any vested interest in said stock or money until the death of my said wife, in case she shall survive me, and that until the death of my said wife and the consequent vesting of said titles and interests my said children and their descendants shall not be entitled to sell, transfer or encumber any of said stock or money or any interest therein, and that the same shall be wholly free from all judgments, attachments, executions and legal processes, against any of my said children or their descendants until or unless said title or interest shall become vested in them by the death of my said wife.

Twenty-third. I hereby direct that the proceeds of the sale of all my personal property, other than bank stock, and not otherwise herein disposed of, together with the proceeds of all debts and demands due or to become due to me, and of all real estate in this last will declared and directed to be disposed of as personalty, shall be applied and disposed of by my executors as follows: They shall first pay to my daughter, Emma Susan Oglesby, the sum of $10,000, and they shall divide the remainder of the proceeds of said personal property in equal parts, amongst all of my said children."

He left surviving him Lemira Park Gillett, his widow, John Park Gillett, Emma S. Oglesby, Grace A. Littler, Nina L. Gillett, Mary C. Hill, Jessie D. Gillett, Amaryllis T. Gillett and Charlotte L. Barnes, his children and only heirs at law. Grace A. Littler died testate May 15, 1891, leaving David T. Littler, her husband, as sole legatee of her personal estate. John Park Gillett died testate September 8, 1901, leaving Inez M. Gillett, his widow, as sole legatee to the personal estate. Lemira P. Gillett died testate September 21, 1901; and the following provision of her will is material:

"Fourth. I give and bequeath unto my daughter, Char-

lotte L. Barnes, all bank stock owned by me in the First
National Bank of Lincoln, Illinois, amounting to about the
sum of nine thousand dollars, the same to be held by her
in trust for her sons and daughters, and to be divided in
equal shares among them, either in said stock or the pro-
ceeds thereof, the share of each to be paid to them when
they shall respectively attain their legal majority, as their
absolute property forever, and I direct that no bond be
required of my said daughter, Charlotte L. Barnes, as such
trustee, and I do hereby revoke so much of paragraph
twenty-two on page fourteen of my said last will of date
April 18, 1891, as shall be inconsistent herewith."

The estate of John D. Gillett was administered by
Richard J. Oglesby, David T. Littler and John P. Gillett,
the executors of his will; and by their inventory it appears
that John D. Gillett died in possession of bank stock in the
First National Banks of Lincoln, Farmer City and Mt.
Pulaski; the Farmers' National Bank of Springfield and
Pekin; the Illinois National Bank of Springfield and the
National State Bank of Bloomington.    Of these the
Farmer City, and Bloomington banks voluntarily liqui-
dated and the stock of the Mt. Pulaski and Pekin banks was
sold; the proceeds from all such stock going to Lemira P.
Gillett by the terms of the will of her husband.    In each
case there was an accretion of surplus and undivided profits
to the par value of the stock.    In 1889 the accumulation
of undivided profits and surplus funds of the Lincoln bank
equaled the amount of the capital stock and by the action
of the stockholders this surplus fund was appropriated to
the capital stock of the bank, which was thereby doubled,
the increase being represented by certificates issued to the
holders of original stock *pro rata*, of which Lemira P. Gil-
lett received 100 shares; and it was this bank stock, issued
on increasing the capital stock, which was mentioned and
bequeathed in the will of Lemira P. Gillett as of her own
property.

The executors of the will of John D. Gillett were dis-
charged in 1896; and later Jessie D. Gillett, as administra-
trix *de bonis non*, with the will annexed, exhibited this
bill in chancery seeking a construction of the will of John

D. Gillett, and an order of distribution of the proceeds of the bank stock converted on liquidation of the banks mentioned and by sale of the stock; and also as to the shares issued upon the increase of capital stock.

The decree of the trial court found that all the bank stock and the proceeds thereof remaining at the death of Lemira P. Gillett passed under the specific bequests of the will of John D. Gillett to the children who survive her; and that it did not pass under the residuary clause; and ordered distribution accordingly. This appeal is prosecuted to effect a reversal of the decree, with the contentions that the court erred by finding and ordering that the funds received by Lemira P. Gillett from the banks going into voluntary liquidation passed under such specific bequests to the children who survived her, and making a like order with reference to the shares of stock in the Lincoln bank issued upon increase of stock. It is insisted that the proceeds of stock upon the liquidation of the banks should pass under the residuary clause, and to the children who survived John D. Gillett; that the increase of stock in the Lincoln bank should pass the same way; and one appellant insists that such increase of capital stock was the absolute property of Lemira P. Gillett and that it should pass under her will.

It is argued that the fact of the accumulation of surplus and undivided earnings on the capital stock of the Lincoln bank and the addition of such earnings to the stock is conclusive of the fact that it became thereby the absolute property of Lemira P. Gillett, and that she was entitled to take and use it as such. An examination of the terms of the will discloses that the testator created a division of his banking interests, making his bank stock the principal and inalienable portion, and its earnings appropriated and divided among the stockholders the secondary portion. The principal portion was bequeathed to her for life, the secondary portion absolutely. We are not disposed to take his use of the term "bank stock" in any special or restricted sense but rather to take it in the general and common acceptation of the term, equivalent to meaning his

interest in the bank. In this sense it is apparent that the term stock includes not only the capital stock considered at par but also the surplus undivided, used by the bank and partaking of many of the attributes of capital stock. This surplus fund at no time left the control of the bank; it was not appropriated and paid out to stockholders but was retained for banking purposes and at length converted to all the uses and purposes of capital stock, and came to the possession and control of the stockholder as capital stock. The secondary portion of his interests in the bank, that part which would be severed from banking purposes and paid out to the stockholders while the other portion was still retained for banking purposes, was, we think, the only part which by the terms of the will could be rightly converted to her own uses by Lemira P. Gillett. It seems to have been the testator's clear intention to keep intact the principal portion of his banking interests during the life of his widow; and such intention will be given full effect. In that view of the matter, which we think admits of no other construction in considering all the terms of this instrument, Lemira P. Gillett was without authority to alienate the shares of stock in the Lincoln bank.

While the will does not in terms specify that the proceeds derived from banks upon winding up affairs and closing business should pass to the specific legatees at the death of Lemira P. Gillett, yet it seems plain from every intendment that such was its purpose. No other disposition is specifically made of such a fund. But the will does provide that unsold stock and the proceeds arising from the sale of stock shall be disposed of in that manner. Now it is clear that stock which passes out of existence upon the winding up and liquidation of a bank can not in any sense be said to have been sold. It was surrendered up to be canceled; its functions destroyed; and was deprived of the capacity of being bought and sold. So that while the stock may have been sold, converted by liquidation or remained in force, we are of the opinion the testator meant to include it all under the terms sold and unsold. Gathered

from the whole will, as we have above noted, it was the testator's intention to preserve unimpaired his banking interests in a fund comprising cash and shares of stock, either or both, to be distributed according to the specific bequests of the will. He expressed this in a manner leaving no reasonable doubt of his intention, and to elicit which it is not necessary either to expunge words from or add language to the will.

The vesting of any interests in the remainder of the bank stock after the life estate, was specifically postponed until the death of Lemira P. Gillett. Grace Adeline Littler and John P. Gillett having died without issue surviving before that contingency, were never seized of a vested interest in the bank stock and were not alive to receive it when she died. Therefore the bequests to each of them lapsed by virtue of the unqualified and clear expression of the will itself. The decree of the Circuit Court is right and it is affirmed.