MERCHANTS NATIONAL BANK OF AURORA, as Successor Ex'r of the Estate of Jean Marie Dunham, Deceased, Plaintiff-Appellant and Cross-Appellee, v. THE OLD SECOND NATIONAL BANK OF AURORA *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—87—0280

Opinion filed December 17, 1987.

12

Robert B. Hupp and Gerald K. Hodge, both of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora (William C. Murphy, of counsel), for appellant.

Edward J. McWethy, of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora (Ralph C. Putnam, Jr., of counsel), for appellee Aurora Foundation.

Mary Ellen Pelling Hulce, of St. Charles, for appellee Estate of John S. Dunham.

William Schanlaber and M. Katherine Moran, both of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora (Richard L. Horwitz of counsel), for other appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Merchants National Bank of Aurora (Merchants), as executor of the estate of Jean Marie Dunham, appeals from an order of the circuit court of Kane County construing the will of John Stewart Dunham. John S. Dunham's will and a codicil to the will were probated after his death on August 27, 1979. The documents provided that most of his property was to be placed in separate trusts for the benefit of each of his children. Only one trust was created, however, because he was survived by only one child, Jean Marie Dunham. Jean Marie died on April 19, 1986, at the age of 18. After Jean Marie's death, Sharon E. Dunham, who was Jean Marie's mother and the original executrix of her estate, filed suit to obtain a declaratory judgment as to the disposition of the trust property. Merchants subsequently became the executor of Jean Marie's estate. Old Second National Bank of Aurora and Martha Schingoethe, cotrustees of the trust (Trustees), filed a separate action. The two cases were consolidated below. Other parties named in the suits were: the Aurora Foundation, a not-for-profit corporation named in John Dunham's will; John C. Dunham, the testator's father; and Wendy Ferm Gibson, the testator's half-sister.

Merchants contended that John Dunham's will did not effectively provide for the contingency that his only child would die without issue. It argued that the remaining trust assets therefore must pass as intestate property to Jean Marie's estate. Trustees and all other named parties contended that the will unequivocally directs that the remaining trust assets be distributed to the Aurora Foundation (Foundation). The trial court granted Trustees' motion for summary judgment and directed distribution of the property to the Foundation. It also awarded attorney fees to all of the parties, to be paid from trust funds. Merchants appeals, contending that the court's construction of the will is erroneous; the Trustees cross-appeal, contending that the court erred in awarding fees to Merchants.

■■ ■ While a court of review ordinarily will not reverse a trial court's judgment unless it finds that its decision was against the manifest weight of the evidence (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110), where the material facts are not in dispute, that standard has no application. (*In re Estate of Offerman* (1987), 153 Ill. App. 3d 299, 302.) And "where the evidence before the trial court is entirely documentary in nature, the appellate court is not bound by the

trial court's findings and may make an independent decision on the facts." (*Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142.) In this case, all of the evidence presented to the trial court was documentary, and the relevant facts are undisputed. We will therefore independently analyze John Dunham's will.

Article I of the will directs the payment of debts, funeral expenses and taxes.

Article II (as amended by the codicil) bequeaths the testator's personal property to his children.

Articles III, IV and V of the will were deleted by the codicil.

Article VI (as amended by the codicil) directs payment of the residue of the estate to the Trustees with instructions that they set aside funds sufficient to satisfy the testator's financial obligations to Sharon E. Dunham, his former wife. It then contains lengthy provisions directing the creation of separate trusts for each of the testator's children into which the residue of the testator's estate should be paid. The Trustees were to make discretionary payments to each child from trust income until the child reached 25 years of age. Each child was to be permitted to withdraw up to one-third of the principal from his or her trust at the age of 25, the second one-third at the age of 30, and the final one-third at the age of 35. Upon the death of any child, the Trustees were to distribute the remaining assets of that child's trust to the testator's surviving descendants. As stated above, only one such trust was created—for the benefit of Jean Marie Dunham. Jean Marie was the testator's sole descendant, leaving no surviving issue at her death. Article VI(B)(6) provides:

> "If any part of the gift under this Article should lapse, fail or abate at any time after my death, because neither my children nor any descendants are alive, then I give, devise and bequeath such part of this gift in accordance with Article X."

Articles VII, VIII and IX are not relevant to this case.

Article X (as amended by the codicil) provides:

> "In the event Sharon predeceases me and in the event I die without children or descendants of deceased children surviving me, then I give, devise and bequeath the residue of my estate to the Aurora Foundation, Aurora, Illinois, an Illinois nonprofit corporation and direct that the Foundation use said funds in its absolute discretion for the following purposes."

It then directs the Foundation to use the funds for scholarships and capital improvements to the Aurora Christian School.

■ Merchants contends that there can be no effective gift to the Foundation because the conditions contained in Article X—the deaths

of Sharon and all of the testator's descendants prior to his own death—have not been met. It argues that the testator therefore failed to provide for the events that actually occurred. Our courts have repeatedly held that "[t]he cardinal rule of testamentary construction is to ascertain and give effect to the testator's intention by examining the will as a whole, and if at all possible, to arrive at a construction which will render all parts thereof compatible." (*Wise v. First National Bank* (1957), 10 Ill. 2d 623, 627; see also *In re Estate of Bridges* (1983), 95 Ill. 2d 383, 390; *Sloan v. Beatty* (1953), 1 Ill. 2d 581, 590; *Vollmer v. McGowan* (1951), 409 Ill. 306, 311.) If the court can ascertain the testator's intention from the language of the will itself, it will not resort to "technical rules of presumed intention." *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 528.

■ We find the testator's intentions here to be entirely evident from the language of the will. Contrary to Merchants' contention, John Dunham clearly considered the possibility that the last of his descendants might die after his own death but during the life of the trust. In article VI(B)(6) he specifically provided that any gift failing *"at any time after my death,* because neither my children nor any descendants are alive" should be given instead "in accordance with Article X." (Emphasis added.) As the Foundation is the only legatee named in Article X, we must conclude that the will plainly conveys the testator's intention to have any remaining trust property distributed to the Foundation on the failure of the testator's descendants after his death.

Merchants' contention that the Article X conditions must also be met is an untenable construction of the will. Had those conditions been met at the time of the testator's death, there would have been no need for the initial creation of a trust under Article VI. Conversely, the fact that a trust was created necessarily excludes the possibility that all of the testator's descendants predeceased him. Merchants' construction would render Article VI(B)(6) meaningless, because under no circumstances could its conditions and those of Article X simultaneously be met. Nor did the testator intend that both sets of conditions would be met. He clearly provided for a gift to the Foundation on the occurrence of either of two distinct and mutually exclusive contingencies. Merchants appears to be objecting primarily to the testator's having used a single provision (Article X) to deal with both possibilities. There is no requirement, however, that a testator organize his will in any particular manner. (See, *e.g., Wise v. First National Bank* (1957), 10 Ill. 2d 623.) So long as his intention is clear

from the will's language as a whole, the court will give it effect. (See *Rosenthal v. First National Bank* (1968), 40 Ill. 2d 266, 276; *Cahill v. Michael* (1942), 381 Ill. 395, 401.) We therefore agree with the construction given the will and codicil by the trial court and affirm its order directing distribution of the trust assets to the Aurora Foundation.

The trial court awarded attorney fees to each of the parties to be paid from the assets of the trust. The Trustees appealed the fee award to Merchants. No appeals have been taken from the fee awards to the other parties, and consequently we will not review those awards. Ordinarily, all parties to a suit must bear their own attorney fees and litigation costs absent a contract or statute providing for the recovery of fees. (See, *e.g., Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166; *Ritter v. Ritter* (1943), 381 Ill. 549, 553.) There is a well-recognized exception to that rule, however, which permits the recovery of fees from an estate where the testator expressed his intentions so ambiguously that judicial construction of his will is required to resolve adverse claims to the property. (See *Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 165; *In re Estate of Reeve* (1946), 393 Ill. 272, 293-94.) In such a case fees will be awarded to a party even if the construction adopted by the court is adverse to his claim. (*Orme v. Northern Trust Co.*, 25 Ill. 2d at 165.) While the issue rests in the sound discretion of the trial court, attorney fees should be awarded only if a construction of the instrument is, in fact, necessary. (25 Ill. 2d at 165; *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 975.) If construction is unnecessary, those seeking unsuccessfully to enforce their own interests are not entitled to receive attorney fees from the estate. (*Northern Trust Co. v. Winona Lake School of Theology*, 61 Ill. App. 3d at 975.) The test is whether the parties have an honest difference of opinion regarding the proper construction of the will. *Orme v. Northern Trust Co.*, 25 Ill. 2d at 165; *La Salle National Bank v. MacDonald* (1954), 2 Ill. 2d 581, 589.

We conclude that this will was not so ambiguous as to necessitate a suit to construe it and that the trial court abused its discretion in awarding attorney fees to Merchants. The testator's will could have been drafted so as to avoid the apparent inconsistency challenged by Merchants. But few instruments are drafted with perfect precision and the testator's intentions were nevertheless easily discernible from the language he used. We decline to equate mildly inconsistent language with an ambiguity necessitating a will construction suit and reimbursement of attorney fees from the estate. We believe that such a

rule would invite heirs-at-law to challenge every will without financial risk, regardless of the clarity of the testamentary scheme, on the outside chance of having it declared invalid. A claimant does not become entitled to an attorney fee award "because of the mere allegation of an ambiguity." *In re Estate of Carlson* (1976), 39 Ill. App. 3d 281, 286.

We find no merit in Merchants' further contention that fees are appropriate here because the Trustees also filed suit, naming Merchants as a defendant. The Trustees' suit was necessary only because Merchants opposed the Trustees' intended distribution of the trust property to the Foundation. (See *Continental Illinois National Bank & Trust Co. v. Bailey* (1982), 104 Ill. App. 3d 1131, 1140.) Accordingly, we reverse that part of the trial court's judgment awarding attorney fees to Merchants.

Affirmed in part and reversed in part.

REINHARD and INGLIS, JJ., concur.