**In re OLYMPIA HOLDING CORPORATION et al., Debtors.**

**Lloyd T. Whitaker, etc., Plaintiff,**

**v.**

**Kendall Company, Defendant.**

**Bankruptcy No. 90–04195–BKC–3P7. Adversary No. 92–11387.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 19, 1999.

Lloyd Whitaker, Atlanta, GA, Trustee.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, Robert D. Wilcox, John B. MacDonald, Brant, Moore, MacDonald & Wells, Jacksonville, FL, for Plaintiff.

Stephen W. Beyer, Augello, Pezold & Hirschmann, P.C., Huntington, NY, Sol H. Proctor, Jacksonville, FL, for Defendant.

## ORDER AS TO PROPRIETY OF VENUE

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for consideration of a single, stipulated issue pending in the plaintiff's motion for leave to amend the complaint (Documents Nos. 6 and 7) pursuant to:

a. Judge Corcoran's Administrative Lead Case Initial Case Management Order en-

tered on March 5, 1998, and the First Supplement thereto entered on July 6, 1998, in Adversary No. 91–00192, *Lloyd T. Whitaker, etc. v. Sportsstuff, Inc.* (Documents Nos. 25 and 32A); and

b. the parties' Stipulation Regarding Pending Motions to Amend Complaints filed on May 18, 1998, in that adversary proceeding (Document No. 31).

That issue is whether venue is proper in the U.S. Bankruptcy Court for the Middle District of Florida pursuant to 28 U.S.C. § 1409(b) in adversary proceedings where the original suit amount was greater than $1,000, but the claim amount as amended would be less than $1,000 as a result of the removal of shipper account code based claims.

Pursuant to the court's orders and the parties' stipulations, this adversary proceeding has been designated as the "lead case" for the 33 proceedings in which this venue issue appears as part of the plaintiff's motions for leave to amend the complaint as set forth in the schedule appearing as Attachment 2 to the stipulation described in paragraph (b) above. Accordingly, the decision contained in this order applies to all of the proceedings in that "venue" group.

As the file reflects, the plaintiff has filed his affidavit and legal memorandum (Documents Nos. 10 and 11), the defendant has filed its opposing legal memorandum (Document No. 12), and the plaintiff has filed his reply memorandum (Document No. 13). In consideration of these papers and the entire file, therefore, the court decides the issues as follows:

## PROCEDURAL POSTURE

On July 13, 1992, the plaintiff filed this adversary proceeding against the defendant seeking a money judgment in the principal amount of over $43,000. On September 28, 1992, and on November 5, 1992, the plaintiff filed motions for leave to amend the complaint (Documents Nos. 6 and 7). By these proposed amendments and pursuant to the stipulation described in paragraph (b) above, the plaintiff seeks to reduce the principal amount he seeks to $288.52.

Because this was one of-literally thousands of adversary proceedings raising the same kinds of "undercharge" claims assigned to the undersigned judge, the court took no action on the motions pending the development with counsel of an agreed framework within which to determine the many issues pending in these adversary proceedings. Ultimately, the court and counsel developed such a framework as set forth in the orders described in paragraph (a) above. One of those issues is the venue issue that the parties have now briefed for the court's determination.

## FACTS

On October 16, 1990, Olympia Holding Corporation, formerly known as P*I*E Nationwide, Inc., filed for relief under Chapter 11 of the Bankruptcy Code. The court later converted the case to a case under Chapter 7, and the plaintiff became the Chapter 7 trustee. This adversary proceeding is one of approximately 32,000 asserting the same kinds of claims filed by the plaintiff in the bankruptcy case.

The debtor was a motor carrier that shipped freight for the defendant before the filing of the bankruptcy case. On July 13, 1992, the plaintiff brought this adversary proceeding against the defendant. Among other claims, the plaintiff sought to recover amounts allegedly owed to the debtor arising from "undercharges," the differences between the undiscounted or published rates and the discounted rates actually billed to and paid by the defendant.

One of the theories advanced by the plaintiff in its complaint was a "secret shipper code" violation. Ultimately, however, the courts determined this "secret shipper code" theory to be without merit. *See Whitaker v. Frito–Lay, Inc. (In re Olympia Holding Corp.)*, 88 F.3d 952 (11th Cir.1996). Accordingly, the plaintiff seeks to abandon his "secret shipper code" claims and, in doing so, reduce the amount he seeks in this adversary proceeding.

The defendant is located in Massachusetts. Although the defendant did not dispute venue in this court when it filed its answer to the

original complaint on August 31, 1992 (Document No. 4), the defendant does so now in connection with the plaintiff's motion for leave to amend the complaint.

## DISCUSSION

### The Issue

█ Venue of adversary proceedings in bankruptcy cases is governed by 28 U.S.C. § 1409. In general, this statute provides that an adversary proceeding under the Bankruptcy Code, or arising in or related to a bankruptcy case, is to be commenced in the district in which the bankruptcy case is pending. 28 U.S.C. § 1409(a). Subsection (b) of the statute, however, provides an important exception for adversary proceedings involving small disputes. This section provides that, when the adversary proceeding seeks "to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000," the bankruptcy trustee "may commence" the proceeding "only in the district court [1] for the district in which the defendant resides."

In this case, the plaintiff filed this adversary proceeding in this court—the court in which the bankruptcy case is pending—rather than in the defendant's home court, the District of Massachusetts. At the time the plaintiff filed the complaint, the plaintiff sought a money judgment in an amount well greater than $1,000. By abandoning his "secret shipper code" claims, however, the plaintiff now seeks less than $1,000.

The defendant resists the plaintiff's efforts to amend the complaint on the grounds that the amendment of the complaint below $1,000 will destroy venue. The import of the defendant's position is that any amendment of the complaint to seek less than $1,000 will require the dismissal of the proceeding or a transfer of its venue to the District of Massachusetts.

The issue the parties raise is an issue of first impression as far as the court knows. The court is unaware of any reported decision interpreting 28 U.S.C. § 1409 in circumstances such as these. If venue is proper in this district when the plaintiff files the complaint, is venue destroyed if the plaintiff later amends his complaint to seek less than $1,000? Or, if venue is initially proper, is a later amendment of the complaint below $1,000 irrelevant?

### The Answer

█ The court begins answering the question this case poses by referring to the statute itself. Section 1409(b) provides that "a trustee ... *may commence* a [small amount] proceeding ... *only* in the district court for the district in which the defendant resides." (Emphasis added). The words "may commence" and "only" suggest that the venue limitation amount set forth in the statute is examined at the time of filing or commencement. Thus, if the amount in controversy exceeds this venue limitation amount, the trustee is not required to file the proceeding in the defendant's home district. Nothing in the words of the statute suggests a requirement that this venue limitation amount be avoided throughout the pendency of the proceeding for venue to continue to be maintained outside the defendant's home district. The words only suggest that the venue limitation amount be avoided at the commencement or filing of the proceeding.

Interpreting the statute in the manner its plain words suggest is consistent with settled case law interpreting analogous jurisdiction and venue statutes. For example, the jurisdictional amount contained in the federal diversity jurisdiction statute, 28 U.S.C. § 1332, is tested at the time the civil action is filed. Notwithstanding the courts' narrow construction of the statute to keep the federal diversity caseload under control, it is

> ... well established law that the jurisdiction of a federal court sitting in diversity is *determined as of the time of the filing of the complaint.* Subsequent events such as a bar by a statute of limitations raised as a defense will not serve to deprive the court of jurisdiction .... *If a statute of limitations reduces the amount claimed to an*

---

1. Pursuant to the standing, general order of reference entered by the district court in the defendant's home district, the bankruptcy court in the

defendant's home district, rather than the district court there, will likely handle the adversary proceeding. *See* 28 U.S.C. § 157(a).

*amount lower than the jurisdictional minimum, the district court still has jurisdiction to adjudicate the rest of the claim.* Seafoam Inc. v. Barrier Systems, Inc., 830 F.2d 62, 66 (5th Cir.1987)(emphasis added) (citations omitted). *See also* St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938) [amount in controversy is judged at the time of filing; subsequent events will defeat jurisdiction only if they show the plaintiff lacked good faith in claiming the higher amount at the time of filing]; *Grinnell Mutual Reinsurance Co. v. Shierk,* 121 F.3d 1114, 1116 (7th Cir.1997); 15 J. Moore, *Moore's Federal Practice* § 102.104[2] at 102–166 (3d ed. 1998) ["Because jurisdiction is determined at the outset of litigation, if the requisite amount in controversy is satisfied at that time, subsequent events that reduce the amount below the statutory requirement generally will not divest the court of jurisdiction."].

Although 1988 legislative amendments to the *removal* statute, 28 U.S.C. § 1447, may now suggest that a removed diversity action must continue to maintain the federal diversity jurisdictional amount if it is to stay removed, *see* Bailey v. Wal–Mart Stores, Inc., 981 F.Supp. 1415, 1416–17 (N.D.Ala.1997), no such suggestion can be made regarding originally filed diversity actions. The rule of excluding subsequent events from consideration, therefore, continues to be good law as to originally filed diversity actions and, by analogy, to the issue raised in this proceeding. This is neither surprising nor inconsistent:

> Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

*Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) (citations omitted).

In this case, the plaintiff initially sought to recover over $43,000. It was only when later developments invalidated the plaintiff's "se-cret shipper code" theory that the plaintiff was forced to abandon those claims, causing his claimed amount to fall below the $1,000 venue limitation amount. In these circumstances, therefore, nothing suggests that the plaintiff lacked good faith in initially seeking the over $43,000 under his "secret shipper code" theory.

Although Section 1409(b) appears to be the only federal *venue* statute with an "amount in controversy" provision, other federal venue statutes contain requirements that must be met for venue purposes. The courts interpret these statutes by looking at the existence of the requirement at the time of filing the complaint and not in light of later developments. For example, 28 U.S.C. § 1391(e) permits a plaintiff to bring suit in any judicial district in which the plaintiff resides when "a defendant is an officer or employee of the United States" in contrast to the usual provision allowing suit only where the claim arose or where the defendant resides. As long as the defendant was a federal officer or employee at the time of the filing of the complaint, venue within the plaintiff's district of residence is proper under Section 1391(e) even if that employment is later ended:

> [V]enue, pursuant to 28 U.S.C. § 1391(e) is not lost by the termination of the employment of an officer or employee subsequent to the date the suit is filed. *That is, section 1391(e) venue is determined as to the date the suit is filed. The purpose of this rule is to facilitate the fixing of venue in a quick and stable manner.*

*Sutain v. Shapiro & Lieberman,* 678 F.2d 115, 117 (9th Cir.1982).

Similarly, for purposes of venue, the "residence" of a corporate defendant is generally deemed to be any district within which the corporate defendant would be subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c). But if the defendant moves, venue in the old jurisdiction of "residence" is not necessarily lost. If the suit is filed before the defendant terminates its "residence" in the district—or, in some jurisdictions, if the cause of action arises before that termination, and suit is filed within a reasonable time thereafter—venue remains in the original jurisdiction. *Sharp v. Commercial Solvents Corp.,* 232

F.Supp. 323, 329 (N.D.Tex.1964). In other words, it is the corporation's "residence" at the time the action is commenced that is decisive of venue. Any subsequent change in that "residence" will have no effect on the validity of the already established venue.

For these reasons, the court concludes that venue continues to be proper in this district notwithstanding the fact that the amount of the plaintiff's claims has fallen below the $1,000 venue limitation amount contained in Section 1409(b). At the time the plaintiff filed this proceeding, the higher amount was plainly and squarely in good faith controversy. The fact that courts later rejected the plaintiff's "secret shipper code" theory does not retroactively destroy venue. If the court were to conclude otherwise, there would be no end to venue litigation, with parties seeking to revisit every venue question with each new development in the case. This, of course, would be completely contrary to the purpose of the rule, that is, "to facilitate the fixing of venue in a quick and stable manner." *Sutain,* at 117.

Because the court reaches this conclusion, it is unnecessary to consider alternative arguments the parties have made. First, the plaintiff has argued that the defendant waived its venue objection by failing to raise it in its answer filed on August 31, 1992, and cannot raise it for the first time now, some six years later. Because the court rejects the merits of the defendant's venue objection, the court need not address the question of waiver.

Second, the plaintiff argues that there is a preference component to its claims and that Section 1409(b) does not apply to preference claims. Thus, the plaintiff argues, even if the court were to find venue improper under that statute, venue would continue to be proper for the preference claims. It is true, of course, that venue of preference claims is controlled solely by 28 U.S.C. § 1409(a). But again, because the court rejects the merits of the defendant's venue objection, the court need not address the question of bifurcating the claims as between preference and non-preference.

## CONCLUSION

For all of these reasons and based upon all of these relevant circumstances, the court concludes that venue of this proceeding was, is, and continues to be proper in this district notwithstanding the reduction of plaintiff's claim to an amount below the $1,000 venue limitation amount set forth in Section 1409(b). The court will apply the determination of this issue in connection with its determination of the motions to amend the complaint.