**In re Norman F. GROGG and Linda S. Grogg, Debtors.**

**No. 01–84487.**

United States Bankruptcy Court, C.D. Illinois.

June 4, 2003.

**300**

Michael A. Williams, Rock Island, IL, for Debtors.

Richard A. Bowers, Rock Island, IL, trustee.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This matter is before the Court on the motion for relief from the automatic stay filed by The Hartford Life Insurance Company ("HARTFORD"), pursuant to Section 362(d)(1) of the Bankruptcy Code, to initiate an interpleader action in the United States District Court for the Northern District of Illinois, Western Division, in Rockford, Illinois, to determine which of two claimants is entitled to certain life insurance proceeds, in the approximate amount of $130,000.00. The proceeds derive from a life insurance policy insuring Barbara J. Stumphy, the daughter of Linda S. Grogg, one of the Debtors. Both Linda S. Grogg and Timothy P. McNeil claim to be entitled to the proceeds.

Linda S. Grogg and her husband, Norman F. Grogg ("DEBTORS"), filed a Chapter 13 petition in this Court on October 19, 2001. Their plan, proposing biweekly payments of $384.00 for thirty-six months, was confirmed on November 20, 2001. According to the plan's projections, unsecured creditors would not receive any distribution. Unsecured claims exceeding $90,000.00 were timely filed. The DEBTORS have continued to make the required payments under the plan.

HARTFORD'S motion alleges that five days prior to her death on February 17, 2002, Barbara J. Stumphy ("BARBARA") changed the beneficiary on a group life insurance policy issued through her employer, Follett Corporation, from Timothy P. McNeil ("McNEIL") to Linda S. Grogg, ("LINDA"). McNEIL, taking the position that the change of beneficiary was ineffective because the insured lacked the requi-

site mental capacity, contacted HARTFORD, contending that he, not LINDA, was entitled to the policy proceeds. Faced with two competing claims, HARTFORD filed this motion for relief from the stay, seeking to file a complaint for interpleader in the United States District Court for the Northern District of Illinois. LINDA objected to the motion, contending that the interpleader action should be filed in this Court. A hearing was held on February 13, 2003. McNEIL appeared, agreeing with HARTFORD that the proper venue of the interpleader action is in the Northern District, where he resides. LINDA also appeared, reiterating her opposition to the motion and expressing her intention to file an adversary proceeding.[1]

 The automatic stay provision of the Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay of:

> [A]ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(3). The automatic stay is one of the most basic protections provided by bankruptcy law, serving to give the debtor a breathing spell from financial pressures and to prevent an unfair distribution of estate assets among creditors. Although the automatic stay halts all judicial proceedings against a debtor, it does not apply to prosecutions of suits by a debtor. *Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir.2001); *In re Foor*, 259 B.R. 899 (Bankr.C.D.Ill.2000). In Chapter 13 cases, the automatic stay remains in effect post-confirmation, and continues to protect property of the estate. *In re Binder*, 224 B.R. 483, 489–90 (Bankr. D.Colo.1998); *In re Herrera*, 194 B.R. 178, 184 (Bankr.N.D.Ill.1996).

Though HARTFORD deemed it appropriate to take the precaution of obtaining relief from the automatic stay, it contends, without citation of authority, that the filing of an interpleader action seeking a determination of the ownership of disputed funds is not an action which is subject to the automatic stay. General support for the proposition urged by HARTFORD is found in a number of decisions. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir.1985); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D.Cal.1989); *Price & Pierce Intern., Inc. v. Spicers Intern. Paper Sales, Inc.*, 50 B.R. 25 (S.D.N.Y.1985). The rationale of these cases is that the purpose of the interpleader action is to determine whether the debtor has an ownership interest in the property, and until that determination is made, the property cannot be considered "property of the estate" within the meaning of Section 362(a)(3). Buttressing that conclusion is the upside-down nature of an interpleader action, whereby the interpleader is but a nominal plaintiff who is in actuality defending itself against multiple claims to the property, whereas the defendant/debtor is akin to a plaintiff, asserting a claim to the interplead property. *See, In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997). Reaching a contrary result, the Sixth Circuit has held that an interpleader action is stayed by the filing of a bankruptcy petition. *NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir. 1985); *See, also, In re Falls Bldg., Ltd.*, 94 B.R. 471 (Bankr.E.D.Tenn.1988)(filing of interpleader action after bankruptcy petition constituted wilful violation of automatic stay).

 As to whether the insurance proceeds are property of LINDA'S bankrupt-

---

1. Neither HARTFORD, LINDA, nor McNEIL submitted any affidavits or requested an opportunity to present any evidence. To date, no adversary proceeding has been filed.

cy estate, the starting point is Section 541 of the Bankruptcy Code, 11 U.S.C. § 541.[2] In pertinent part, that section defines property of the estate to include any interest in property that the debtor becomes entitled to acquire within 180 days after the petition date "as beneficiary of a life insurance policy." 11 U.S.C. § 541(a)(5)(C). The change in beneficiary and BARBARA'S death both occurred within 180 days of LINDA'S bankruptcy filing. In addition, in Chapter 13 cases, property of the estate includes all property of the kind specified in Section 541 that the debtor acquires after commencement of the case but before the case is closed, dismissed or converted. 11 U.S.C. § 1306(a)(1). The parties do not dispute that LINDA was the designated beneficiary at the time of BARBARA'S death. Therefore, if by virtue of that status she became "entitled to acquire" the proceeds, then the insurance proceeds are property of LINDA'S bankruptcy estate. HARTFORD and McNEIL contend, again without authority, that until a judicial determination is made that LINDA is the legal beneficiary, the insurance proceeds are not property of the estate. LINDA'S rights in the proceeds are a question of nonbankruptcy law.

▪ Although a debtor's interest in property is ordinarily determined under state law, federal law may preempt state law with respect to certain kinds of property subject to federal regulation. That is the case with ERISA-regulated employee benefit plans. In *Melton v. Melton*, 324 F.3d 941 (7th Cir.2003), a dispute arose between two persons claiming to be the lawful beneficiary of the proceeds from a deceased employee's group term life insurance policy procured through his employer and governed by ERISA. The employee's ex-wife based her claim on the fact that the plan provided that the insurance benefits were payable to her as the named beneficiary. Asserting a competing claim, the employee's daughter relied on the divorce decree requiring the employee to maintain the life insurance policy for the benefit of his minor children, including the daughter.

The Seventh Circuit noted that the Supreme Court previously held that a state statute was expressly preempted by ERISA where it required plan administrators to pay beneficiaries as determined by state family law rather than by the plan documents, contrary to ERISA'S direction that fiduciaries make payments to the beneficiary designated by a participant, in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). The court also referred to its own opinion in *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558 (7th Cir.2002), where it held that ERISA preempted the Illinois common law doctrine of substantial compliance to the extent that it affected

---

**2.** Section 541 is broadly construed to include every conceivable interest of the debtor, whether future, nonpossessory, contingent, speculative or derivative. *Matter of Yonikus*, 996 F.2d 866 (7th Cir.1993). Property of the estate includes property of the debtor that is subject to a creditor's security interest or in which the debtor has no possessory rights. *In re Coleman*, 229 B.R. 428 (Bankr.N.D.Ill. 1999). It includes a debtor-attorney's interest in a potential contingent fee, even though the client might lose at trial. *In re Carlson*, 263 F.3d 748 (7th Cir.2001). A debtor's remainder interest in a trust is sufficient to render the trust corpus property of the estate, even where the remainder interest was valueless because of the prior claims, so that the bankruptcy court had jurisdiction to adjudicate rights to the trust. *In re Outboard Marine Corp.*, 278 B.R. 778, 782–83 (N.D.Ill.2002). Even property that may be fully exempt is included within the estate initially, until the exemption is properly claimed and allowed, at which time the property passes out of the estate. *Yonikus*, 996 F.2d at 869–70.

the status of beneficiaries named in the deceased's ERISA-regulated employee benefits plan.

Applying the same rationale to the case before it, the court rejected the daughter's attempt to invoke the Illinois common law doctrine of constructive trusts, holding that ERISA preempts Illinois state law with respect to determining the rightful beneficiary of an ERISA-regulated group term life insurance policy. The court concluded that the ex-wife, as the designated beneficiary, was the proper beneficiary of the insurance policy.

■■■■■ At this point, there is no indication in the record whether the group policy that insured BARBARA is ERISA-regulated, other than the representation in HARTFORD'S motion that BARBARA enrolled in the group life insurance plan offered by her employer, Follett Corporation. If, in fact, that plan is governed by ERISA, then the disputed insurance proceeds, at present, are property of LINDA'S bankruptcy estate, on the basis of federal law, given that LINDA was the designated beneficiary at the time of BARBARA'S death.[3]

Even if the Follett Corporation plan is not ERISA-regulated, in which case Illinois law determines LINDA'S property interest, the life insurance proceeds, at present, are property of the bankruptcy estate. Under Illinois law, immediately upon the death of the insured, the beneficiary named in a life insurance policy at the time of the insured's death obtains a vested and absolute right to the proceeds, subject to contrary provisions in the policy. *Bank of Lyons v. Schultz,* 22 Ill.App.3d 410, 415, 318 N.E.2d 52 (Ill.App. 1 Dist. 1974). When an insured has the right to change the beneficiary on a life insurance policy, a named beneficiary acquires no vested right in the insurance policy during the insured's lifetime; vested rights are determined only upon the insured's death. *Employers Modern Life Co. v. Lindley,* 83 Ill.App.3d 394, 404 N.E.2d 1036, 39 Ill.Dec. 445 (Ill.App. 5 Dist.1980). In *Davis v. Combes,* 294 F.3d 931 (7th Cir.2002), the court stated that "Illinois ... recognizes a strong presumption that the named beneficiary of a life insurance policy is entitled to its proceeds," noting, however, that the presumption is not irrebuttable, but could be overcome on equitable grounds on a showing of fraud, breach of a fiduciary duty, or duress, coercion or mistake, resulting in the imposition of a constructive trust.

The fact that McNEIL is making a claim of ownership to the same proceeds does not affect LINDA'S status as present owner. McNEIL has no present right to the proceeds under either federal or Illinois law, only a contingent claim. LINDA'S interest is a vested right that is subject to divestment upon the occurrence

---

**3.** In *Melton,* the court noted that in its earlier decision in *Metropolitan Life Ins. Co. v. Johnson,* 297 F.3d 558 (7th Cir.2002), involving whether the insured had effectively changed his beneficiary designation despite several errors in executing the form, it held that ERISA preempted the Illinois state law doctrine of substantial compliance, applying instead a federal common law doctrine of substantial compliance. In so holding, the court stated:

The question then is whether the 1996 change of beneficiary form is valid under ERISA. But, as we previously noted, ERISA is silent as to the resolution of disputes between putative beneficiaries of a life insurance policy. The Supreme Court has recognized, in situations where ERISA preempts state law but is silent on a topic, that courts would have to develop a body of federal common law, where appropriate, based on principles of state law.

*See, also, Tinsley v. General Motors Corp.,* 227 F.3d 700, 704 (6th Cir.2000) and *Metropolitan Life Insurance Co. v. Hall,* 9 F.Supp.2d 560 (D.Md.1998).

of a condition subsequent, a judicial determination that McNEIL is the lawful beneficiary.

Perhaps the situation most analogous to a dispute between putative beneficiaries to a life insurance policy, is a will contest. In *Matter of Chenoweth*, 3 F.3d 1111, (7th Cir.1993), the Seventh Circuit held that a debtor's inheritance under a will was property of the estate, despite the debtor's disclaimer of the legacy. The testator died within 180 days of the bankruptcy filing and the court, construing the meaning of the phrase "becomes entitled to acquire" in Section 541(a)(5), reasoned as follows:

> But all the after-acquired statute requires is an entitlement. The entitlement is created by the will, and confirmed by the probate proceeding. *Peter v. Peter*, 343 Ill. 493, 175 N.E. 846, 850 (1931); *In re Estate of Knight*, 178 Ill.App.3d 777, 127 Ill.Dec. 867, 869, 533 N.E.2d 949, 951 (1989). This would be clear even if the will were contested. It would then be just like a case in which a lender claims that the borrower has not repaid him, the borrower denies it, and the lender sues. The lender's suit will be based on his entitlement to be repaid. Of course, he may lose the suit, just as a legatee may lose the legacy because the will that devised it is successfully challenged. But if the lender wins his suit, or the legacy is sustained by the probate court, this establishes that the lender and the legatee indeed had their respective entitlements—entitlements vindicated, not created, by the legal proceedings. "While the will was

probated after the commencement of this suit, it, when probated, spoke as of the death of the testator ... [T]he property, in the eyes of the law, vested in her at the time of the testator's death." *Peter v. Peter, supra*, 175 N.E. at 850. "Our courts always have recognized the marked distinction between the vesting of an estate and the right to enjoy possession of that estate. The latter is effected by probate proceedings, while the former is not." *In re Estate of Knight, supra*, 127 Ill. Dec. at 869, 533 N.E.2d at 951.

*See, also, In re Bentley*, 120 B.R. 712 (Bankr.S.D.N.Y.1990) (bequest to debtor under will was property of the estate even though subject to possible termination through *in terrorem* clause or otherwise where, under New York law, bequest vested in debtor upon testator's death); *In re Elliott*, 81 B.R. 460 (Bankr.N.D.Ill.1987) (inherited property was property of the estate despite contested will where, under Illinois law, title passed to devisee upon testator's death).

The Seventh Circuit's reasoning in *Chenoweth* is equally applicable here where the same statutory language is at issue. Under Illinois law or under federal law, if applicable, LINDA, as named beneficiary, became "entitled to acquire" the insurance proceeds upon BARBARA'S death. The fact that her interest is contested makes no difference. Under Section 541(a)(5), the insurance proceeds are property of her bankruptcy estate.[4]

In addition, courts uphold the propriety of turnover of property of the estate held by a neutral stakeholder who

---

**4.** If McNEIL was in bankruptcy, the insurance proceeds would *not* be property of his bankruptcy estate, although his "claim" of ownership would be. *See, Matter of Carousel Intern. Corp.*, 89 F.3d 359 (7th Cir.1996). LINDA'S vested right determines the property

of the estate issue as an initial matter. The mere fact that another has a competing claim to property owned by a debtor does not serve to divest that ownership interest. If McNEIL ultimately prevails, the proceeds will pass out of the bankruptcy estate at that time.

holds funds subject to competing claims. *In re Great Western Coal, Inc.*, 146 B.R. 702, 706 (Bankr.S.D.Tex.1992); *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 967–68 (5th Cir.1983) (where the debtor has a legal interest in property subject to the claim of a third party, it is the bankruptcy court's role to determine the dispute after ordering appropriate procedures to protect the claimant's potential interest). Moreover, matters requiring a declaration of whether property of the estate is held in constructive trust in favor of a third party are core proceedings. *In re Johnson*, 960 F.2d 396, 402 (4th Cir.1992). Case law also supports the conclusion that an action for declaratory relief regarding the debtor's rights under insurance policies is a core proceeding. *Matter of Celotex Corp.*, 152 B.R. 667, 676 (Bankr. M.D.Fla.1993).

 In light of the Court's determination that the insurance proceeds are property of LINDA'S bankruptcy estate, it follows that the filing of an interpleader action, necessarily requiring the funds to be deposited with the court clerk, would be an act "to exercise control over property of the estate" in violation of Section 362(a)(3). Therefore, HARTFORD'S caution in bringing the stay relief motion was entirely justified.

In the present posture of this case, however, where the interpleader has not been filed, this Court need not determine whether its filing would have violated the automatic stay.[5] HARTFORD'S motion for relief from the stay to commence an interpleader action in the District Court for the Northern District of Illinois, coming mid-way through LINDA'S Chapter 13 proceeding, raises quite different concerns.

 HARTFORD'S motion is brought pursuant to Section 362(d)(1), which permits the court to modify the stay "for cause." The Bankruptcy Code does not define the term "for cause" and the determination whether to lift the stay to permit a party to commence or continue litigation in another forum depends upon the particular facts underlying the case. *Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991). The Court of Appeals for the Seventh Circuit has adopted an approach which balances the costs and benefits of continuing the stay, identifying three factors which must be considered in determining whether to lift the stay: (1) the prejudice to the debtor or the bankruptcy estate from allowing the non-bankruptcy litigation to continue; (2) the relative hardship to the debtor and to the party seeking relief; and (3) the creditor's probability of prevailing on the merits in the litigation. *Matter of Udell*, 18 F.3d 403 (7th Cir.1994); *Fernstrom, supra; In re Kmart Corp.*, 2002 WL 31819033 (N.D.Ill.2002). Eschewing the factor-based analysis employed by other courts, the court in *In re Comdisco, Inc.*, 271 B.R. 273 (Bankr.N.D.Ill.2002), referenced the Seventh Circuit's sentiment that "a list of factors without a rule of decision is just a chopped salad."[6]

---

**5.** In most of those cases holding that an interpleader action does not violate the automatic stay, the interpleader action was pending at the time a bankruptcy petition was filed. In *Holland America Ins. Co.*, the interpleader action was filed in the district court where the debtor's bankruptcy was pending, shortly after the bankruptcy occurred. The court noted that the fire generating the insurance proceeds also occurred after the bankruptcy petition was filed.

**6.** The following list of factors is commonly identified: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal

 HARTFORD did not, however, address those factors at the hearing on its motion. Rather, both HARTFORD and McNEIL candidly identified their argument as one not of jurisdiction, but of venue. HARTFORD, professing its neutrality, contends that, but for LINDA'S pending bankruptcy, the interpleader action would have been filed in the Northern District, based on the following four factors: (1) BARBARA resided there; (2) the contract was entered into there; (3) BARBARA'S employer is located there; and (4) the rival claimant resides there. An interpleader action may be brought either pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335, or under Rule 22 of the Federal Rules of Civil Procedure, Fed. R.Civ.P. 22. In a statutory interpleader action, venue is proper in any district in which one or more of the claimants reside. 28 U.S.C. § 1397. An action brought under Rule 22 is governed by the general venue statute, 28 U.S.C. § 1391. Section 1391(a)(2) provides that venue is proper in a diversity action, if the action is filed:

(1) in a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Assuming, based on its arguments, that HARTFORD contemplates the filing of a Rule 22 interpleader, contrary to HARTFORD'S assertions, the action could be brought either in the Northern District, because that is where McNEIL resides or where a substantial part of the events giving rise to the claim occurred, or in the Central District, because that is where LINDA resides.

 HARTFORD'S premise that a determination by this Court that the filing of an interpleader action would not violate the automatic stay frees it from all constraints of the Bankruptcy Code is also unsound. As a general rule, the proper venue for bankruptcy-related proceedings is in the district in which the bankruptcy case is pending. 28 U.S.C. § 1409(a); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194 (3rd Cir.1991); *Blanton v. IMN Financial Corp.*, 260 B.R. 257 (M.D.N.C.2001); *In re Olympia Holding Corp.*, 230 B.R. 629 (Bankr.M.D.Fla.1999).[7] Because the word "may" is permissive,

---

with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See,*

*In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2nd Cir.1990); *In re Schick*, 232 B.R. 589 (Bankr.S.D.N.Y.1999). Courts applying those factors recognize that not all factors are relevant in a particular case and that not every factor is of equal importance. *Schick, supra.*

**7.** 28 U.S.C. § 1409, provides:

(a) Except as otherwise provided in subsections (b) and (d) [relating to actions brought by a trustee], a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

however, this provision is not regarded as an exclusive venue provision. *Bank United v. Manley*, 273 B.R. 229 (N.D.Ala.2001); *Kalamazoo Realty Venture Ltd. Partnership v. Blockbuster Entertainment Corp.*, 249 B.R. 879, 888 (N.D.Ill.2000). There is, however, a strong presumption in favor of maintaining venue in the "home court." *See, Matter of Continental Airlines, Inc.*, 133 B.R. 585 (Bankr.D.Del.1991).

Given HARTFORD'S limited role as interpleader, denying HARTFORD its chosen forum, will result in no prejudice to HARTFORD. The denial of HARTFORD'S motion will not preclude McNEIL from bringing a motion to transfer venue raising the appropriate concerns at that time. Upon the filing of an adversary proceeding in this Court, McNEIL could file a motion under Bankruptcy Rule of Procedure 7087, to transfer the adversary proceeding to the Northern District pursuant to 28 U.S.C. § 1412, which provides for a transfer "in the interest of justice or for the convenience of the parties."

The fact that the insurance proceeds are property of LINDA'S bankruptcy estate, and that the determination of the dispute is a core proceeding, weigh heavily in favor of the bankruptcy court as the proper forum for commencement of the litigation. The bankruptcy court is in the best position to consider the effect of a potential transfer of venue on the debtor and on the administration of the bankruptcy estate.

Under all of the circumstances, the Court finds that HARTFORD has failed to demonstrate cause for modification of the automatic stay. HARTFORD'S motion will be denied and the stay remains in effect as to the insurance proceeds. LINDA or the Chapter 13 Trustee may commence an adversary proceeding against HARTFORD and McNEIL seeking turnover of the insurance proceeds to the Trustee and adjudication of the competing claims to the insurance proceeds. Alternatively, HARTFORD may file an interpleader action as an adversary proceeding.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.